# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40701

Consolidated with: 16-40702

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

WILLIAM CHANCE WALLACE,

      Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Texas

ON PETITION FOR REHEARING EN BANC

Before JONES, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:

The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (Fed. R. App. P. 35 and 5th Cir. R. 35), the petition for rehearing en banc is **DENIED**.

In the en banc poll, 7 judges voted in favor of rehearing (Judges Smith, Dennis, Prado, Owen, Elrod, Graves, and Willett), and 8 judges voted against rehearing (Chief Judge Stewart and Judges Jones, Clement, Southwick, Haynes, Higginson, Costa, and Ho).

ENTERED FOR THE COURT:

_Edith Brown Clement_

EDITH BROWN CLEMENT
United States Circuit Judge

JAMES L. DENNIS, Circuit Judge, joined by JAMES E. GRAVES, Circuit Judge, dissenting from denial of rehearing en banc:

Defendant William Wallace contends that the Government violated the Fourth Amendment by ordering his service provider to activate his phone's "Enhanced 911" capability[1] and to relay his GPS coordinates in real time, including while he was in his home. The panel opinion concludes that, even if the Government's real-time tracking of Wallace's GPS coordinates was an unconstitutional search, Wallace cannot benefit from the exclusionary rule suppression of the fruits of that search because law-enforcement officials could have reasonably relied on open-ended language in 18 U.S.C. § 2703(c), a provision of the Stored Communications Act (SCA), as authorizing their actions. The panel relies on *Illinois v. Krull*, 480 U.S. 340, 360 (1987), which recognized an exception to the exclusionary rule for the fruits of an unconstitutional search conducted in objectively reasonable reliance "on a statute that appeared legitimately to allow a warrantless administrative search." Because I believe the panel misapprehends and misapplies *Krull* as its ultimate authority for finding an exception to the exclusionary rule in the present case, I respectfully dissent from the denial of rehearing en banc.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that evidence obtained by officers acting in objectively reasonable reliance on a search warrant later held not to be supported by probable cause need not be excluded from a criminal prosecution. In *Krull*, the Court found that the rationale underlying *Leon* applied equally to evidence obtained by officers

---

[1] Enhanced 911 (E911) refers to wireless service providers' ability to accurately determine the location of customers who call 911. Federal law requires service providers to incorporate E911 capabilities to facilitate rescue and emergency assistance. *See* Enhanced 911 Emergency Calling Systems, 61 FED. REG. 40,374 (proposed Aug. 2, 1996) (codified at 47 C.F.R. § 20.18).

acting without a warrant but in objectively reasonable reliance on an administrative-inspection statute later held to be unconstitutional. *Krull*, 480 U.S. at 350–51. The Court's reasoning rested in part on legislators' similarity to magistrates—the relevant actors in *Leon*—at least with respect to their *dissimilarity* from "adjuncts to the law enforcement team." *Id.* at 350–51 (quoting *Leon*, 468 U.S. at 917). The Court held that excluding evidence obtained pursuant to a statutorily authorized search would penalize the "officer for the [legislature's] error, rather than his own," and therefore could not "logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 350 (quoting *Leon*, 468 U.S. at 921). *Krull* thus holds that law enforcement officials may defer to the constitutional judgment of the legislature if that judgment is expressed in clear statutory authorization for the officials' actions.

The good-faith exception announced in *Krull* is clearly inapposite here. As an initial matter, there is no similar legislative judgment as to the constitutionality of the officers' actions in this case. The statute at issue in *Krull* authorized warrantless administrative inspections of a regulated business. *See* 480 U.S. at 360. The Court observed that there was

> no evidence suggesting that . . . legislatures have enacted a significant number of statutes permitting warrantless administrative searches violative of the Fourth Amendment. Legislatures generally have confined their efforts to authorizing administrative searches of specific categories of businesses that require regulation, and the resulting statutes usually have been held to be constitutional.

*Id.* at 351 (collecting cases). The Court therefore addressed circumstances in which there was a clear pattern of legislative action and consistent court approval of such action. That administrative-search statutes, as a class, had generally been upheld was relevant to both the Court's decision to fashion an exception to the exclusionary rule at all, *id.*, and to its conclusion that the

4

officer's reliance on the administrative-search statute at issue in *Krull* was objectively reasonable, *see id.* at 357–59.

Unlike in *Krull*, here there is no legislative judgment or dialogue between the courts and the legislature as to the constitutionality of the real-time GPS surveillance at issue. Congress passed the SCA over thirty years ago. *See* Elec. Commc'ns Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1848. At that time there was no E911 requirement, *see* 61 FED. REG. 40,374, and GPS was still experimental military technology that would not begin to be in widespread civilian use until over a decade later, *see* RICHARD ROWBERG, CONG. RESEARCH SERV., RL30474, SCIENCE, TECHNOLOGY, AND MEDICINE: ISSUES FACING THE 106TH CONGRESS, SECOND SESSION (2000); Press Release, White House Office of Sci. & Tech. Policy Nat'l Sec. Council, Fact Sheet U.S. Global Positioning System Policy (Mar. 29, 1996).

Moreover, as has been expressed by five members of the current Supreme Court and by members of this court, there is grave doubt as to the constitutionality of the kind of warrantless, real-time GPS tracking at issue in this case. *See, e.g.*, *United States v. Jones*, 565 U.S. 400, 415–18 (2012) (Sotomayor, J. concurring); *id.* at 425 (Alito, J. concurring in the judgment) (expressing concern that the majority's trespass-based reasoning was under-inclusive because it would provide no protection if "the Federal Government required or persuaded auto manufacturers to include a GPS tracking device in every car"); *In re the United States for Historical Cell Site Data*, 724 F.3d 600, 615 (5th Cir. 2013) (agreeing that there is a constitutionally relevant distinction between "the [g]overnment collecting the information or requiring a third party to collect and store it" and "a third party, of its own accord and for its own purposes, recording the information"). Thus, both the nature of the statute and the nature of the alleged constitutional violation strongly suggest that *Krull* does not apply here.

Equally troubling, unlike the statute at issue in *Krull*, which reasonably appeared to authorize warrantless administrative searches, the SCA does not reasonably appear to authorize real-time GPS tracking.  The statute at issue in *Krull* required parties licensed to sell vehicles or vehicle parts to permit officials to inspect records pertaining to the purchase and sale of vehicles and parts "and to allow 'examination of the premises of the licensee's established place of business for the purpose of determining the accuracy of required records.'"  480 U.S. at 342–43 (quoting ILL. REV. STAT., ch. 95 1/2, para. 5-401(e) (1981)).  By contrast, the relevant provision of the SCA provides that, in certain enumerated circumstances, "[a] governmental entity may require a provider of electronic communication service . . . to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications)."  § 2703(c)(1).  The panel opinion reasons that the phrase "or other information" could be read to include real-time GPS coordinates and claims that nothing else in the text of the SCA precludes such a reading.  Slip Op. at 7–8.

This holding ignores plain language in the SCA suggesting that real-time collection of GPS tracking information is not authorized by this statute. Section 2703(c) is part of the "*Stored* Communications Act." (emphasis added). The pertinent section is entitled "*Records* concerning electronic communication service or remote computing service." § 2703(c) (emphasis added).  GPS coordinates that have not yet been created and would not be created absent the Government's intervention cannot be called "records" or "stored" communications under any commonsense understanding of those terms. Moreover, at the time of the surveillance in this case, a majority of courts[2]

---

[2] *See, e.g.*, *In re Application of U.S. for an Order Authorizing Disclosure of Location Based Servs.*, No. H-07-606M, 2007 WL 2086663, at *1 (S.D. Tex. July 6, 2007) ("Nothing in § 2703 requires, or authorizes the Government to demand, that a provider create records

along with numerous legal scholars[3] had observed that the SCA does not permit the Government to order the creation or collection of real-time location information. Against this backdrop, the panel opinion's proposed interpretation of the SCA is not objectively reasonable.

To make up for the lack of textual and precedential support for its proffered reading of the SCA, the panel falls back on extraneous factors to conclude that the officer's reliance was reasonable, relying on the officers' consultation with an assistant district attorney. But *Krull* allows officers to defer to a *legislature's* constitutional judgment, not a prosecutor's. Much more so than legislators and neutral magistrates, prosecutors are "adjuncts to the law enforcement team." *See Krull*, 480 U.S. at 360 n.17. An officer's consultation with someone in the local prosecutor's office does not implicate the kind of "detached scrutiny" of a neutral decisionmaker that might assuage concerns about improper searches. *See Leon*, 468 U.S. at 913 (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977)).

It is some comfort that, after two revisions, the panel has eliminated several pernicious aspects of its previous opinions. However, the panel's latest revision still misses the mark. It also misses the opportunity to provide sorely needed guidance on the meaning of a complicated and poorly understood statute. Indeed, I am afraid the majority's opinion aggravates rather than

---

which would not otherwise exist in the ordinary course of business."); *In re Application of the U.S. for an Order Authorizing the Installation and Use of a Pen Register Device, a Trap and Trace Device, & for Geographic Location Info.*, 497 F. Supp. 2d 301, 309 (D.P.R. 2007) ("[T]he SCA cannot, at least by itself, support the government's applications in this case, which seek cell site information prospectively . . . ."); *In re Application of the U.S. for an Order Authorizing the Release of Prospective Cell Site Info.*, 407 F. Supp. 2d 134, 140 (D.D.C. 2006) (concluding that real-time location information is only available pursuant to a warrant).

[3] *See, e.g.*, Deirdre K. Mulligan, *Reasonable Expectations in Electronic Communications: A Critical Perspective on the Electronic Communications Privacy Act*, 72 GEO. WASH. L. REV. 1557, 1565 (2004); Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1231–33 (2004).

alleviates the confusion. For these reasons, I respectfully dissent from the denial of rehearing en banc.